STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-2022-11

SCOTT FRANCIS,

Petitioner

v.

MAINE WARDEN SERVICE,
MAINE DEPARTMENT OF
INLAND FISHERIES AND
WILDLIFE,

Respondent

**DECISION AND ORDER**

## INTRODUCTION

Before the court is the appeal by Scott Francis (Francis) from the decision of the Commissioner of the Department of Inland Fisheries and Wildlife denying his application for a non-concealed firearm permit (also referred to as a "black powder" permit) pursuant to 15 M.R.S. § 393(2). This appeal is brought pursuant to 15 M.R.S. § 393(5) and in accordance with 5 M.R.S. §§ 11001-11008 (Maine Administrative Procedure Act - MAPA) and M.R.Civ.P. 80C.

For the reasons explained below, the appeal is denied, and the decision of the Commissioner is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 16, 2016, Francis entered pleas of guilty to and was convicted of the following criminal offenses: Theft by Deception (Class B); Perjury (Class C); Theft by Deception (Class C) (3 Counts); Intentional Evasion of Income Taxes (Class C) (2 Counts), and; Unemployment Fraud (Class D). *See State of Maine v. Scott Francis*, KENCR-2015-688 (Murphy J.). He was sentenced to 120 days straight on

Counts 2-8, to be served concurrently with each other. He was also sentenced to 4 years, all suspended, with 3 years of probation, to be served consecutively to the other counts. *See Administrative Record, "AR" at 7-11 and 13-14*. Francis was also ordered to pay restitution of over $16,000 to the Town of Clinton and over $2,000 to the Maine Department of Labor. The circumstances surrounding the criminal conduct committed by Francis involved allegations of workers' compensation fraud, including giving perjured testimony before the Worker's Compensation Board. *AR at 8*.

Francis was released from the Kennebec County Correctional Facility on June 4, 2016. *AR at 16*. On July 8, 2016, Francis moved to terminate his probation, which was granted the same day, according to the docket record. *AR at 29*.

In September 2021, Francis filed an application with the Maine Warden Service for a "Black Powder Permit." *AR at 3-6*. Upon receipt of the application, the Warden Service sent copies to the Attorney General's Office, which had prosecuted the case against Francis, and the Chief of the Clinton Police Department. *AR at 30-35*. Shortly after receiving a copy of the application, an Assistant Attorney General responded to the Warden Service as follows:

> This applicant may be a former police officer. You may wish to check with the Criminal Justice Academy for any available records.
>
> There is media coverage of an individual named Scott Francis with convictions similar to those listed in your notice. I have not verified that the person identified in the article and your applicant are the same person, and have not independently verified the other allegations regarding Mr. Francis, but am forwarding the link in the event you wish to follow up.
>
> I will be objecting to this application, and will submit a more formal objection on behalf of the Attorney General.
> *AR at 35*.

2

In a letter dated October 1, 2021, the Attorney General's Office wrote to the Department of Inland Fisheries and Wildlife that it was objecting to the Francis application for a permit under 15 M.R.S. § 393, "[b]ased on the *seven* disqualifying convictions, which demonstrate dishonesty and a disregard for the law by an individual whose duty it was to enforce and uphold the law, . . . ." (Emphasis is original). *AR at 37*. The Police Chief of Clinton did not lodge an objection to the application.

In a memorandum dated February 28, 2022, Major Chris Cloutier recommended to Commissioner Judith Camuso that she deny the Francis application because of the objection filed by the Attorney General's Office and "considering the multiple convictions." *AR at 38-39*. On the same day, the Commissioner wrote to Mr. Francis and denied his application for a "nonconcealed firearm permit," also known as a "black powder permit." The Commissioner wrote:

> Pursuant to 15 MRSA § 393, I am denying your application for the following reasons:
> 1. The department received an objection from the Office of the Attorney General;
> 2. Based on the very serious nature of the disqualifying crimes of which you were convicted, and your criminal history in general, I do not think the issuance of a permit is appropriate.

*AR at 1*.

Francis filed his petition for judicial review of the Commissioner's decision on April 5, 2022.

## DISCUSSION

The Law Court has frequently reaffirmed the principle that judicial review of administrative agency decisions is "deferential and limited." *Passadumkeag Mountain Friends v. Bd. of Envtl. Prot.*, 2014 ME 116, ¶ 12, 102 A.3d 1181 (quoting *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 12, 989 A.2d 1128).

The court is not permitted to overturn an agency's decision "unless it: violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or error of law; or is unsupported by the evidence in the record." *Kroger v. Dep't of Envtl. Prot.*, 2005 ME 50, ¶ 7, 870 A.2d 566. The court may not substitute its judgment for that of the agency's on questions of fact. 5 M.R.S. § 11007(3). The party seeking to vacate a state agency decision has the burden of persuasion on appeal. *Anderson v. Me. Pub. Emp. Ret. Sys.*, 2009 ME 134, ¶ 3, 985 A.2d 501.

As someone who has been convicted of a felony, Mr. Francis is prohibited from owning, possessing, or having under his control a firearm. 15 M.R.S. § 393(1) (A-1)(1). As a general matter, this is a lifetime prohibition. A limited exception exists under section 393(2), however, which allows a prohibited person, "after the expiration of 5 years from the date that the person is finally discharged from the sentence imposed," to apply to the. Governor's Office "for a permit to carry a firearm subject to subsection 4."[1] 15 M.R.S. § 393(2). Among other information, the application must include the "make, model and serial number of the firearm sought to be possessed," which cannot be a "firearm" as defined in 18 U.S.C. § 921(a)(3).[2]

The statutory scheme requires the Governor's Office, within 30 days of determining that the application is in proper form, to send notice of the application to various officials, including the Attorney General. 15 M.R.S. § 393(4). The law then states:

---

[1] It is the court's understanding that the Governor has delegated her authority under this statute to the Maine Warden Service within the Department of Inland Fisheries and Wildlife.

[2] It is also the court's understanding that federal law provides that a "firearm" does not include an "antique firearm," which in turn includes a muzzle loading rife or pistol designed to use black powder and cannot use "fixed ammunition." 18 U.S.C. §§ 921(a)(3) & (16)(C). It is for this reason that the permit to possess a firearm under section 393(2) is commonly referred to as a "black powder permit."

> If, within 30 days of the sending of notice, a person notified objects in writing to the Governor regarding the initial issuance of a permit and provides the reason for the objection, the Governor may not issue the permit. The reason for the objection must be communicated in writing to the Governor in order for it to be the sole basis for denial.

15 M.R.S. § 393(4)(A)[3]

The Governor is authorized to deny a permit "even if no objection is filed." 15 M.R.S. § 393(4).

The Law Court has made it clear that the statutory process for applying for a "black powder permit" and the process that gives to certain named persons or officials "the absolute right to object to the issuance of the permit," does not raise any due process concerns because "a previously-convicted felon, has only a unilateral expectation and not a property interest in that permit . . . ." *Gonzales v. Commissioner, Dep't of Pub. Safety,* 665 A.2d 681, 683 (Me. 1995). *See also Bouchard v. Commissioner, Dep't of Pub. Safety,* 2015 ME 50, ¶¶ 12-13, 115 A.3d 92. Mr. Francis has not argued otherwise.

Rather, Francis contends that the Commissioner's denial of his application was affected by bias and was arbitrary and capricious. The court rejects both arguments.

Mr. Francis suggests that the real reason the Attorney Generals' Office objected was not because of his convictions, "but because the Petitioner's underlying matters had received 'media coverage.'" *Petitioner's Brief at 5.* The record evidence does not support that suggestion. In her email to the Warden Service after receiving notice of the Francis application, the Assistant Attorney General noted that Francis "may be a former police officer." She also observed that there had been media

---

[3] If the application is for a 2nd or subsequent issuance of a permit, the Governor is required to take any objection by the notified officials into consideration, "but need not deny the issuance of a permit based on an objection alone." 15 M.R.S. § 393(4)(B).

coverage of someone named Scott Francis, but she had not verified that the person named in the article and the applicant were one and the same. She forwarded a link to the article to the investigator with the Warden Service if he wanted to follow up on it.

There is no support in the administrative record for the notion that the Attorney Generals' objection was based on bias towards Mr. Francis because of any media coverage surrounding his cases. On the contrary, the reference to that media coverage was for the purpose of alerting the staff person investigating the Francis permit application to the existence of potential information about Francis and his cases that might be relevant to that application. The administrative record fully supports the conclusion that the Attorney General's objection was "[b]ased on the *seven* disqualifying convictions, which demonstrate dishonesty and a disregard for the law by an individual whose duty it was to enforce and upheld the law . . . ." AR at 37.

The Attorney General's objection met the requirements of 15 M.R.S. § 393(4)(A). As a result, the Commissioner was not authorized to issue the permit.[4]

Francis also asserts that the Commissioner's denial of his application was arbitrary and capricious because it was "[b]ased on the very serious nature of the disqualifying crimes of which you were convicted, and your criminal history record in general." AR at 1. Francis contends that "[t]he *nature* of the crimes that [he] was convicted of were not very serious." *Petitioner's Brief at 7 (italicized in original).* The court disagrees. The fact that a sworn police officer engaged in fraud, including perjury before the Worker's Compensation Board, is highly serious by its very nature notwithstanding the fact that it did not involve crimes of violence or the threat of violence.

---

[4] Considering the Attorney General's objection under section 393(4), the Commissioner could not issue the permit for that reason alone. Nevertheless, the court will address the Petitioner's remaining arguments.

Finally, Francis maintains that the Commissioner's denial was factually wrong, and therefore arbitrary and capricious, because it was based on his "criminal history in general," which he states only includes the eight (8) crimes of which he was convicted in KENCR-2015-688. In the court's view, Francis has misinterpreted the Commissioner's denial letter of February 28, 2022. AR at 1. The Commissioner was not referring to some non-existent "criminal history record in general." She was referring to the 7 disqualifying felonies when viewed individually and to the entire course of conduct engaged in by Mr. Francis, which included an 8th conviction for the Class D offense of Employment Fraud.

## CONCLUSION

The entry is:

The Petition for Judicial Review is DENIED, and the Commissioner's decision denying the application for a permit under 15 M.R.S. § 393(2) is AFFIRMED.

DATED: NOVEMBER 4, 2022

William R. Stokes
Justice, Maine Superior Court

7